UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                              :
405 CONDO ASSOCIATES LLC,                     :
                                              :
                Plaintiff,                    :        OPINION AND ORDER
                                              :
            - against -                       :        11 Civ. 9662 (SAS)
                                              :
GREENWICH INSURANCE                           :
COMPANY,                                      :
                                              :    ┌─────────────────────────────┐
                Defendant.                    :    │ USDC SDNY                   │
-------------------------------------------------- X │ DOCUMENT                  │
                                                    │ ELECTRONICALLY FILED        │
SHIRA A. SCHEINDLIN, U.S.D.J.:                      │ DOC #:                      │
                                                    │ DATE FILED: 12 / 26 / 12   │
                                                    └─────────────────────────────┘

I. INTRODUCTION

         405 Condo Associates LLC ("405 Condo") brings this action seeking

indemnification for losses stemming from Hurricane Irene against defendant

Greenwich Insurance Company ("Greenwich"). Greenwich now moves for

summary judgment seeking to dismiss the plaintiff's complaint in its entirety.

Greenwich also moves to bar the testimony of plaintiff's expert, Solomon

Rosenzweig ("Rosenzweig"), pursuant to *Daubert v. Merrell Dow

Pharmaceuticals, Inc.*[1] and Rule 702 of the Federal Rules of Evidence. For the

following reasons, the motion to bar expert testimony is granted and the motion for

---

[1]     509 U.S. 579 (1993).

summary judgment is denied.

## II.    BACKGROUND

### A.    Procedural History

On December 22, 2010, Greenwich issued an insurance policy (the "Policy") to 405 Condo covering certain losses to its property located at 405 Broadway, New York, NY 10013.[2]  The subject property is a five story condominium bordered by buildings in excess of twenty stories.[3]  405 Condo alleges that, on August 28, 2011, the property was damaged by winds from Hurricane Irene.[4]

On August 29, 2011, 405 Condo retained B.H. Contracting to repair the roof of 405 Broadway.[5]  B.H. Contracting's repairs cost $140,481.41.[6]  Belayet Chowdhury ("Chowdhury"), the founder and principal of B.H. Contracting, oversaw the repairs and allegedly witnessed damage to the roof the morning after

---

[2]      *See* Complaint ("Compl."), Ex. A to Notice of Removal, ¶ 4.

[3]      *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opp. Mem.") at 1.

[4]      *See id.*

[5]      *See* Defendant's Memorandum of Law in Support of Motion to Bar Expert Testimony and for Summary Judgment ("Def. Mem.") at 4.

[6]      *See* 9/9/11 B.H. Contracting Invoices, Exs. G and H to 9/25/12 Declaration of Mark Antin, defendant's counsel, in Support of Defendant's Motion to Bar Expert Testimony and for Summary Judgment ("Antin Dec."), at 1.

the hurricane.[7]  During the same period, General Mechanical Operators &
Construction Inc. ("G.M.O.C.") performed $42,385.85 worth of repairs to interior
areas of the building damaged by leakage.[8]  405 Condo also incurred
approximately $21,800 of expenses due to window repairs and treatments.[9]  405
Condo then filed an insurance claim under the Policy asserting that it was entitled
to recover costs totaling $208,411.51 for damage caused by Hurricane Irene.[10]

     After determining that the property damage was not covered by the
Policy, Greenwich denied the claim.[11]  The Policy provides:

> 1.  We will not pay for loss of or damage to property, as
> described and limited in this section.  In addition, we will not pay
> for any loss that is a consequence of loss or damage as described
> and limited in this section. . .
>
> > c.  The interior of any building or structure, or to personal
> > property in the building or structure, caused by or resulting
> > from rain, snow, sleet, ice, sand or dust, whether driven by
> > wind or not, unless
> >
> > > (1) The building or structure first sustains damage
> > > by a Covered Cause of Loss to its roof or walls

---

[7]     *See* Opp. Mem. at 2-3.

[8]     *See* 9/7/11 G.M.O.C. Invoice, Ex. I to Antin Dec., at 3.

[9]     *See* Unique Window Treatments Invoice, Ex. J. to Antin Dec., at 1.
*See also* Eagle Aluminum Windows Invoice, Ex. K. to Antin Dec., at 1.

[10]     *See id.*

[11]     *See id.* at 6.

through which the rain, snow, sleet, ice, sand or dust enters . . .[12]

Greenwich's investigation revealed that 405 Broadway suffered damage exclusively from seepage or wind-driven rain, and that the building did not first sustain damage by a Covered Cause of Loss such as wind damage.[13]

405 Condo does not dispute Greenwich's interpretation of the Policy, but alleges that all of the interior and exterior damage resulted from gusts of wind.[14]  Specifically, 405 Condo contends that wind peeled back the roof flashing at the subject property, allowing rain to infiltrate the premises and cause widespread interior damage to the property.[15]  On November 28, 2011, 405 Condo commenced this litigation against Greenwich seeking at least $250,000, plus interest and costs.

**B.     The Expert**[16]

Greenwich seeks to bar Rosenzweig, 405 Condo's expert, from

---

[12]     *Id.* at 9-10.

[13]     *See id.* at 11.

[14]     *See* Opp. Mem. at 1.

[15]     *See id.*

[16]     These facts are drawn from Rosenzweig's resumé.  *See* Rosenzweig resumé, Ex. F to Antin Dec., at 1-2.

testifying that gusts of wind caused damage to the roof.[17]  Rosenzweig received a

Bachelor's Degree in Civil Engineering and a Master's Degree in Civil

Engineering in 1997, both from Cooper Union.  Rosenzweig has worked as an

engineer for four different firms since earning his degrees.  From 2001-2004,

Rosenzweig was responsible for field supervision of structural repairs as well as

waterproofing and roofing repairs at Feld, Kaminetzky & Cohen, PC.  In 2001, he

founded his own firm, Solomon Rosenzweig, which offers roof inspection and

replacement services.  Rosenzweig is currently a licensed professional engineer in

New York, and a member of the American Institute of Steel Construction, the

National Society of Professional Engineers, and the American Welding Society.

Rosenzweig has been certified as an expert witness in New York Supreme Court,

as well as several courts in Kings County and Queens County.

## III.    LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

"Summary judgment is designed to pierce the pleadings to flush out

those cases that are predestined to result in a directed verdict."[18]  Thus, summary

judgment is only appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

---

[17]     *See* Def. Mem. at 1.

[18]     *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).

material fact and that the movant is entitled to judgment as a matter of law."[19]  "For

summary judgment purposes, a 'genuine issue' exists where the evidence is such

that a reasonable jury could decide in the non-moving party's favor."[20]  "'A fact is

material when it might affect the outcome of the suit under governing law.'"[21]

[T]he burden of demonstrating that no material fact exists lies with the moving

party . . . ."[22]  "When the burden of proof at trial would fall on the nonmoving

party, it ordinarily is sufficient for the movant to point to a lack of evidence to go

to the trier of fact on an essential element of the non[-]movant's claim."[23]

In a summary judgment setting, "[t]he burden is on the moving party

to demonstrate that no genuine issue respecting any material fact exists."[24]  "When

---

[19]     Fed. R. Civ. P. 56(c).

[20]     *Sanchez v. Connecticut Natural Gas Co.*, 421 Fed. App'x 33, 34 (2d Cir. 2011) (quoting *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000)).

[21]     *Carter v. Incorporated Vill. of Ocean Beach*, 415 Fed. App'x 290, 292 (2d Cir. 2011) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[22]     *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted).

[23]     *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[24]     *Mavrommatis v. Carey Limousine Westchester, Inc.*, No. 10 Civ. 3404, 2011 WL 3903429, at *1 (2d Cir. Sept. 7, 2011) (citing *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994)).

the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim."[25]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[26]  The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[27] and cannot "'rely on conclusory allegations or unsubstantiated speculation.'"[28]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"[29]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of

---

[25]     *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

[26]     *Id.*

[27]     *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[28]     *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

[29]     *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

legitimate inferences from the facts are jury functions, not those of a judge.'"[30]

"'The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"[31]

## IV.   APPLICABLE LAW

### A.   Admissibility of Expert Testimony Generally

The proponent of expert evidence bears the initial burden of establishing admissibility by a "preponderance of proof."[32]  Federal Rule of Evidence 702 states the requirements for the admission of expert testimony as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;

---

[30]   *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[31]   *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

[32]   *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) (discussing Rule 104(a) of the Federal Rules of Evidence).  *Accord Daubert*, 509 U.S. at 592 & n.10 (citing *Bourjaily*, 483 U.S. at 175–76, and explaining that the proponent of expert testimony must prove admissibility by a preponderance of proof).

> (c) the testimony is the product of reliable principles
> and methods; and
> (d) the expert has reliably applied the principles and
> methods to the facts of the case.

Under Rule 702 and *Daubert*, the district court must determine whether the
proposed expert testimony "both rests on a reliable foundation and is relevant to
the task at hand."[33]  That is, the district court must act as "'a gatekeeper to exclude
invalid and unreliable expert testimony.'"[34]  Nonetheless, "the Federal Rules of
Evidence favor the admissibility of expert testimony, and [the court's] role as
gatekeeper is not intended to serve as a replacement for the adversary system."[35]
Accordingly, in serving as gatekeeper, the court must focus on the principles and

---

[33]      509 U.S. at 597.  *Accord Kumho Tire Co. v. Carmichael*, 526 U.S.
137, 147–49 (1999).

[34]      *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 449 (2d Cir. 1999) (quoting
*Hollander v. American Cyanamid Co.*, 172 F.3d 192, 202 (2d Cir. 1999)).  *Accord
Louis Vuitton Malletier v. Dooney & Bourke, Inc. ("Vuitton IV")*, 525 F. Supp. 2d
558, 561–65 (S.D.N.Y. 2007) (discussing district court's "special obligation" to
gatekeep with respect to expert evidence).
         Additionally, expert testimony may not usurp the role of the court in
determining the applicable law.  *See United States v. Lumpkin*, 192 F.3d 280, 289
(2d Cir. 1999).  Although an expert "may opine on an issue of fact," an expert
"may not give testimony stating ultimate legal conclusions based on those facts."
*United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  Expert testimony
is also inadmissible when it addresses "lay matters which [the trier of fact] is
capable of understanding and deciding without the expert's help."  *Andrews v.
Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

[35]      *Vuitton IV*, 525 F. Supp. 2d at 562 (citation and quotation marks
omitted).

9

methodologies underlying the expert's conclusions, rather than on the conclusions themselves.[36]  To this end, courts may consider (1) "whether [the method or theory] can be (and has been) tested," (2) "whether [it] has been subjected to peer review and publication," (3) "the known or potential rate of error [associated with the technique] and the existence and maintenance of standards controlling the technique's operation," and (4) whether the method has achieved "general acceptance" within the relevant community.[37]

The court's objective when exercising this gatekeeping function is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[38]  However, recognizing that "there are many different kinds of experts, and many different kinds of expertise," the Supreme Court has emphasized that the reliability inquiry "is a flexible one."[39]  Accordingly, the factors "identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the

---

[36]     *See Daubert,* 509 U.S. at 595.

[37]     *Id.* at 592-95.

[38]     *Kumho Tire*, 526 U.S. at 152.

[39]     *Id.* at 150.

expert's particular expertise, and the subject of his testimony."[40]  Ultimately, the inquiry "depends upon the particular circumstances of the particular case at issue."[41]  In sum, the trial court has "the same kind of latitude in deciding how to test an expert's reliability . . . as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable."[42]  Moreover, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[43]  In particular, "expert testimony should be excluded if it is speculative or conjectural."[44]

Additionally, Federal Rule of Evidence 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Given that "[e]xpert evidence can be both powerful and quite misleading because of the

---

[40]     *Id.* (quotations omitted).

[41]     *Id.*

[42]     *Id*. at 152 (emphasis in original).

[43]     *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[44]     *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir. 1996). *Accord Major League Baseball Props., Inc. v. Salvino,* 542 F.3d 290, 311 (2d Cir. 2008) ("An expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment.").

difficulty in evaluating it[,] the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."[45]

B.   **Lay Testimony**

Federal Rule of Evidence 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."  The Advisory Committee Note explains that this requires a witness to "be a percipient witness whose testimony is grounded in first-hand information obtained through one of his or her five senses . . . The required threshold  . . . however, is low, requiring only enough 'to support a finding' by some rational juror of personal knowledge."

Rule 701 allows lay witnesses to express opinions, inferences, and conclusions only if they are: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

---

[45]      *Id.*  (quotation marks omitted).

## C.    Hearsay

Out-of-court statements that are introduced to prove the truth of the matter asserted are classified as hearsay,[46] and they are admissible only if they bear adequate indicia of reliability.[47]  "Reliability can be inferred . . . in a case where the evidence falls into a deeply rooted hearsay exception."[48]  One such exception, codified in Federal Rule of Evidence 803(6), allows the records of a regularly conducted activity to be admitted if:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

"Rule 803(6) favors the admission of evidence rather than its exclusion if it has any

---

[46]    *See* Fed. R. Evid. 801(c)  ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

[47]    *See, e.g., Bierenbaum v. Graham*, 607 F.3d 36, 49 (2d Cir. 2010).

[48]    *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004).

probative value at all."[49]   "'[T]he principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable.'"[50]

## V.   DISCUSSION

### A.   Rosenzweig's Testimony Is Inadmissible

Greenwich challenges the reliability of Rosenzweig's testimony rather than his qualification as an expert.  Greenwich argues that Rosenzweig's testimony constitutes an impermissible "net opinion," or *ipse dixit* statement, because it fails to adequately explain how Rosenzweig reached his conclusion that gusts of wind damaged the roof.[51]   I agree.[52]

Rosenzweig opines "within a reasonable degree of engineering certainty that the roof and flashing were first damaged by wind, and that the water

---

[49]      *United States v. Williams*, 205 F.3d 23, 24 (2d Cir. 2000).

[50]      *Health Alliance Network, Inc. v. Continental Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007) (quoting *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994)).

[51]      *See* Def. Mem. at 12.

[52]      Because I agree with Greenwich that Rosenzweig's amended report suffers from the same inadequacies as the original, I do not reach the issue of whether or not the amendment was improper.  *See* Defendant's Memorandum of Law in Further Support of Motion to Bar Expert Testimony and for Summary Judgment ("Reply Mem.") at 8.

penetration and damage were subsequent to the wind damage."[53]  Rosenzweig

bases this opinion on a weather report taken at JFK airport — thirteen miles away

from 405 Broadway — that recorded wind gusts of up to fifty-nine miles per hour

on August 28, 2011.[54]  Rosenzweig posits that tall buildings neighboring 405

Broadway raised wind speed in the area and increased "the load on items such as

windows and flashing" due to a phenomenon known as the Bernoulli effect.[55]

Rosenzweig would testify that these elevated wind speeds resulted in damage to

the roof flashing, allowing rainwater to enter the building.[56]

This testimony fails to satisfy the reliability requirement of Rule 702.

*First*, Rosenzweig's report does not mention the type of material used in the

flashing or attempt to approximate the wind speeds necessary to cause the flashing

to peel back.  This renders his testimony speculative.  *Second*, Rosenzweig's report

contains no methodology for differentiating wind damage caused by Hurricane

Irene from prior damage or rain damage alone.  *Third*, that Rosenzweig did not

examine the roof in person until May 31, 2012 — eight months after the damage

---

[53]     Proposed Amended Expert Report, Ex. A to 10/22/12 Declaration of Matthew Aboulafia, plaintiff's counsel, at 3.

[54]     *See id.* at 2.

[55]     *Id.*

[56]     *See id.*

allegedly occurred and after repairs had been completed — calls into doubt the reliability of his testimony given the absence of a clear methodology or relevant data.[57]   Here, there is "simply too great an analytical gap between the data and the opinion proffered."[58]   Because Rosenzweig's testimony is speculative, it is excluded.

**B.      The B.H. Contracting and G.M.O.C. Invoices, and Chowdhury's Testimony, Are Admissible**

Greenwich argues that 405 Condo's invoices regarding repair work to the roof are inadmissible for two reasons.  *First*, Greenwich argues that they constitute inadmissible hearsay evidence.[59]   *Second*, Greenwich argues that Chowdhury should not be permitted to testify because he has not been qualified as an expert.[60]   Both of these arguments lack merit.

**1.      The Invoices Are Admissible as Business Records**

405 Condo argues that the invoices are admissible under the business records exception to the hearsay rule.[61]   The B.H. Contracting invoice was made at

---

[57]      *See id*. at 2.

[58]      *Joiner*, 522 U.S. at 146.

[59]      *See* Def. Mem. at 19.

[60]      *See id.*

[61]      *See* Opp. Mem. at 15.

the time of the repair by Chowdhury.[62]  Similarly, the G.M.O.C. invoice was made near the time of the repair in the course of business, rather than in preparation for litigation.[63]  Both of these entities are capable of providing testimony as to the necessity, regularity, and reasonableness of their business records.[64]

Greenwich points to nothing about the invoices that indicates a lack of trustworthiness.  Indeed, in its reply brief, Greenwich makes no attempt to explain why the invoices fail to meet the requirements for the business records exception.[65] As a result, and because all of the elements of the business records exception are met, the invoices will be admitted.[66]

### 2. Chowdhury May Testify as a Layperson Under Federal Rule of Evidence 701

Greenwich argues that Chowdhury may not testify because he is not a qualified expert.[67]  Under Rule 701, "if an opinion rests 'in any way' upon

---

[62]     *See* B.H. Contracting Invoices.

[63]     *See* G.M.O.C. Invoice.

[64]     *See* Opp. Mem. at 14.

[65]     *See* Reply Mem. at 9.

[66]     *See Time Warner Entm't / Advance Newhouse P'ship v. Sherman*, 87 Fed App'x 774, 775-76 (2d Cir. 2004) (affirming District Court's admission of third party invoices under business records exception to the hearsay rule).

[67]     *See* Def. Mem. at 19.

17

scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701."[68]  However, Chowdhury has first-hand knowledge of the condition of the roof at 405 Broadway after the storm, and it doesn't take an expert to see that roof flashing has peeled back, allowing water to penetrate a roof.  Testimony to that effect is neither irrelevant nor prejudicial.  Nor does Chowdhury's experience as a contractor convert him from a lay witness to an expert witness.[69]

But because Chowdhury lacks personal knowledge as to wind speeds during the storm,[70] he may not testify as to what wind speeds were during the storm or whether, in his opinion, wind speeds reached levels sufficient to cause the

---

[68]     *U.S. v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (citing 4 *Weinstein's Federal Evidence* § 701.03[1]).

[69]     *See U.S. v. Fama*, No. 12–CR–186, 2012 WL 6102700, at *2 (E.D.N.Y. Dec. 10, 2012) ("'When a lay witness has particularized knowledge by virtue of her experience, she may testify — even if the subject matter is specialized or technical — because the testimony is based upon a layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.'") (quoting *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009)). *See also Briese Lichttechnik Vertriebs GmbH v. Langton*, No. 09 Civ. 9790, 2012 WL 5457681, at *6 (S.D.N.Y. Nov. 8, 2012) (finding that a witness with over fifteen years of experience working with lighting equipment could testify as a lay person regarding the structure and operation of particular types of lighting equipment).

[70]     *See* 6/25/12 Deposition of Belayet Chowdhury, Ex. O to Antin Dec., at 146:3-22.

damage he observed to the flashing.  Such testimony is unrelated to his perception,

and therefore is inadmissible.[71]

### C.   405 Condo Has Presented Enough Evidence of Damages to Survive Summary Judgment

Finally, Greenwich argues that 405 Condo has not met its burden to

prove damages by admissible evidence.[72]  Even without the Rosenzweig report,

both the B.H. Contracting and G.M.O.C. invoices provide a measure for the

damages claimed.[73]  Although Greenwich disagrees with these assessments and has

provided its own measure of damages,[74] the trier of fact must ultimately weigh the

reasonableness of the competing estimates in determining which to apply.[75]

Greenwich also argues that the invoices do not provide adequate proof

---

[71]    *See Romanelli v. Long Island R.R. Co.*, No. 11 Civ. 2028, 2012 WL 2878132, at *4 (S.D.N.Y. July 13, 2012) (finding that plaintiff witness could testify that he was exposed to fumes, but not that the fumes were "hazardous contaminants.").

[72]    *See* Def. Mem. at 18.  "Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and *damages*."  *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (emphasis added).

[73]    *See* B.H. Contracting Invoice at 1.  *See also* G.M.O.C. Invoice.

[74]    *See* Report of Minogue Associates, Inc., Ex. U to Antin Dec.

[75]    *See Kaytor*, 609 F.3d at 545 ("In reviewing the evidence and the inferences that may reasonably be drawn, the court 'may not make credibility determinations or weigh the evidence.'") (quoting *Reeves,* 530 U.S. at 150) (emphasis omitted).

of damages because they do not differentiate damage caused by wind from damage caused by rain, which are not covered by the Policy.[76]  In particular, Greenwich seeks to dismiss claims relating to interior and exterior damage that, it argues, cannot be the result of damaged roof flashing.[77]  However, Rafi Gibly, the managing partner of 405 Condo, testified at his deposition that he observed leakage and water damage throughout the subject premises during the storm.[78]  He further testified that he experienced high wind speeds in the neighborhood of the subject premises during the storm and that the neighborhood was "extremely windy on a regular basis," often experiencing wind speeds that seemed greater than those in other parts of the City.[79]  He also stated that he observed flashing damage on the day of the storm[80] and that previous rainfall had not resulted in such damage.[81] This testimony, if believed, supports 405 Condo's theory that wind gusts, rather than non-covered events such as rainfall, resulted in the damage to the subject

---

[76]    *See* Reply Mem. at 9.

[77]    *See* Def. Mem. at 20-21.

[78]    *See* 4/11/12 Deposition of Rafi Gibly, Ex. M to Antin Dec., at 55:20-62:25.

[79]    *See id.* at 54:2-67:17.

[80]    *See id.* at 71:2-4.

[81]    *See id.* at 60:3-5.

property.  While Greenwich may dispute this theory, it has not met its burden of

proving that no genuine factual dispute exists regarding the source of the property

damage.  Once more, it is for the trier of fact to weigh the extent of the damage

caused by the storm.

## VI.  CONCLUSION

For the foregoing reasons, Greenwich's motion to bar expert

testimony is granted and its motion for summary judgment is denied.  The Clerk of

the Court is directed to close these motions (Docket No. 12).  A conference is

scheduled for January 7, 2013 at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:         New York, New York
               December 24, 2012

21

**-Appearances-**

**For Plaintiff:**

Matthew S. Aboulafia, Esq.
Aboulafia Law Firm, LLC
60 East 42nd Street, Suite 2231
New York, NY, 10165
(212) 684-1422

**For Defendant:**

Mark L. Antin, Esq.
Gennet, Kallmann, Antin, & Robinson, P.C.
140 Broadway
New York, NY 10005
(212) 406-1919